UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE LEE STEWART,

    Plaintiff,                                        Civil Action No. 14-11121

v.                                                                          HON.  LAURIE J. MICHELSON
                                                                                            U.S. District Judge
                                                                                  HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL                              U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Joe Lee Stewart ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On January 31, 2013, Plaintiff applied for DIB and SSI, alleging an onset of disability date of December 20, 2012  (Tr. 154-160, 161-166).  After the initial denial of

benefits, Plaintiff requested an administrative hearing, held on November 1, 2013 in Lansing, Michigan before Administrative Law Judge ("ALJ") Christopher Ambrose[1] (Tr. 23). Plaintiff, represented by attorney, Donald Busta, testified (Tr. 27-42), as did Vocational Expert ("VE") Teresa Karpinski (Tr. 42-45). On November 12, 2013, ALJ Ambrose found Plaintiff not disabled (Tr. 18-19). On January 27, 2014, the Appeals Council denied review (Tr. 1-4). Plaintiff filed for judicial review of the final decision on March 17, 2014.

## BACKGROUND FACTS

Plaintiff, born December 14, 1960, was 52 when the ALJ issued his decision (Tr. 18-19, 154). He obtained a GED and according to his application for benefits, worked previously as a janitor, laborer, process attendant, and "unloader" (Tr. 182-183) He alleges disability as a result of Chronic Obstructive Pulmonary Disease ("COPD"), back problems, arthritis of the left wrist, and diabetes (Tr. 181).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

He last received an unemployment check on February 15, 2012 (Tr. 27). The condition of COPD had worsened in the previous year (Tr. 28). His physician recommended the use of a nebulizer one-and-a-half months before the hearing (Tr. 29). He had not been diagnosed with emphysema and had not received treatment from a pulmonary specialist (Tr.

---

[1] ALJ Ambrose noted that previously, another ALJ found that Plaintiff was not disabled through December 19, 2012 (Tr. 25).

29). He was hospitalized for three days in February, 2013 for pneumonia (Tr. 29-30). He wheezed more frequently now than a year ago (Tr. 30). He had been trying to quit smoking, but still smoked approximately 15 hand-rolled cigarettes each day (Tr. 31).

He currently lived in a warehouse owned by a friend (Tr. 32). His 15-year-old son lived in an adjoining house with the same friend (Tr. 32). Plaintiff did not own a car and relied on his friend to drive him to the grocery store (Tr. 33). He stopped working in 2010 when the plant where he was working closed (Tr. 34). He worked at the plant as a process attendant which required him to monitor items on an assembly line (Tr. 34). Even if the plant had not closed, he would have been unable to continue working due to breathing problems (Tr. 34-35). He acknowledged that he collected unemployment for a year-and-a-half after losing the job, during which time he attempted to procure other work (Tr. 35). He had not looked for work since the unemployment benefits were terminated (Tr. 35).

On a typical day, Plaintiff was inactive until his son came home from school (Tr. 36). His son would help him make dinner (Tr. 36). He was unable to lift more than 10 pounds with his left (dominant) hand due to arthritis (Tr. 37). He was able to dress himself (Tr. 37).

In response to questioning by his attorney, Plaintiff, a diabetic, reported that since the December, 2012 decision, he had become insulin dependent (Tr. 38). He was able to keep his blood sugar levels under control with the use of insulin (Tr. 39). He stopped smoking during the hospital stay, acknowledging that his breathing was not as labored during that time because he was not smoking (Tr. 39-40). He allowed that smoking contributed to "a

percentage" of his breathing problems, adding that at various former jobs he was exposed to chemicals used in janitorial work, sawdust, feed dust, and glass dust (Tr. 40). He experienced the medication side effects of dizziness, fatigue, and weakness (Tr. 40). He had experienced a greater degree of dizziness in the past year (Tr. 41). Plaintiff reported that he experienced arthritis of the knees and feet (Tr. 42).

**B.     Medical Evidence**[2]

**1. Records Relating to Plaintiff's Treatment**

May, 2012 progress notes by Hugh Lindsey, M.D. note a history of COPD, hypertension, diabetes mellitus, esophagael reflux, hyperlipidemia, arthritis, back pain, and migraines (Tr. 220). Dr. Lindsey noted that Plaintiff exhibited his "usual state of health" (Tr. 221). October, 2012 imaging studies of the heart were essentially normal (Tr. 231). A December 10, 2012 x-ray of the left hand showed only minimal degenerative changes (Tr. 228).

February 7, 2013 treating notes by Todd R. Otten, M.D. state that Plaintiff smoked between 11 and 20 cigarettes each day (Tr. 222). Plaintiff reported that his pain was "manageable" with the current medication and that the diabetes was asymptomatic (Tr. 224). He reported worsening dyspnea during exertion (Tr. 224). Dr. Otten found the presence of COPD and exertional dyspnea but noted that Plaintiff was non-compliant with the prescribed

---

[2]Medical evidence predating the December 19, 2012 denial of benefits is included for background purposes.

"overall regimen" and while "limited on funds . . . continue[d] to smoke" (Tr. 225). Plaintiff was prescribed Prednisone for COPD symptoms (Tr. 226).

The same day, Dr. Otten completed a medical source statement on behalf of Plaintiff's application for benefits, stating that Plaintiff was able to lift 10 pounds occasionally and less than 10 pounds frequently (Tr. 232). Dr. Otten found that Plaintiff could stand or walk for at least two hours in an eight-hour workday but would be required to alternate between sitting and standing (Tr. 232-233). Dr. Otten found that Plaintiff experienced the limitations of pushing/pulling in both the upper and lower extremities (Tr. 233). He found that Plaintiff was precluded from all climbing and balancing and limited to occasional kneeling, crouching, or crawling along with a limitation on handling and fingering (Tr. 233-234). Dr. Otten commented that the manipulative limitations were due to arthritic pain (Tr. 234). He found that exposure to temperature extremes, dust, humidity, and fumes should be limited (Tr. 234).

On February 20, 2013, Plaintiff sought emergency treatment after experiencing weakness and shortness of breath (Tr. 235). He was diagnosed with acute renal failure (Tr. 236). Discharge records state that his condition improved after receiving intravenous fluids (Tr. 236, 266, 270). Plaintiff acknowledged smoking and the use of marijuana (Tr. 247). He was given contact information for free assistance in smoking cessation (Tr. 273). He reported that he had experienced a cough and fever for two weeks prior to the hospital stay (Tr. 250). Followup notes from the following month state that Plaintiff reported worsening

symptoms of COPD (Tr. 259). He was prescribed the use of an inhaler (Tr. 260).

### 2. Non-Treating Records

On May 29, 2013, Quan Nguyen, M.D. performed a non-examining assessment of Plaintiff's treating records on behalf of the SSA, finding that Plaintiff could lift/carry 20 pounds occasionally and 20 frequently; sit, stand, or walk for up to six hours in an eight-hour day; and push or pull without limitation (Tr. 87). He found that Plaintiff would be required to sit for 15 minutes for every hour of standing (Tr. 87). Dr. Nguyen found that Plaintiff would be limited to performing postural functions on an occasional basis (Tr. 87-88). He found that Plaintiff would be limited to frequent (as opposed to *constant*) use of the left (dominant) hand for fingering (Tr. 88). Dr. Nguyen determined that Plaintiff should avoid even moderate exposure to temperature extremes, fumes, and hazards (Tr. 89). He found that Plaitniff should avoid concentrated exposure to humidity and vibration (Tr. 89). Dr. Nguyen cited records showing that Plaintiff could walk up to one mile and exhibited a normal gait (Tr. 89). He noted that Plaintiff did not require the use of an oxygen tank (Tr. 89).

### C.     Vocational Expert Testimony

The ALJ posed the following question to VE Karpinski, describing a hypothetical individual of Plaintiff's age, education, and work background:[3]

---

[3] The ALJ noted that he was reading the "hypothetical" question from the previous hearing (Tr. 42). I note that the question is almost identical to the RFC found in the previous December 19, 2012 opinion (Tr. 54).

> [Can] [p]erform light work,[4] can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, can sit, stand, and walk six hours in an eight-hour workday. Would require an option to sit for fifteen minutes after every hour of standing while remaining on task. He can frequently use foot controls and occasionally use hand controls. He can frequently finger with the left hand. He can occasionally crawl, crouch, kneel, stoop, and balance. He can occasionally climb ramps, stairs, ladders, and scaffolds. He cannot work in an area with concentrated exposure to humidity, wetness, dust, fumes, odors, chemicals, gases, and extreme cold or extreme heat. Based upon those functions and limitations, are there jobs in the national economy such a person could perform in your opinion? (Tr. 42-43).

The VE testified that while the above described individual would be unable to perform Plaintiff's past relevant work, he could perform the light, unskilled work of a counter attendant (30,000 jobs in the national economy); ticket taker/usher (10,000); and general office clerk (150,000) (Tr. 44). She stated, in effect, that her testimony was consistent with the information found in the *Dictionary of Occupation Titles* ("*DOT*") but noted that the *DOT* was silent as to the effect of a sit/stand option on a job qualification (Tr. 45). She stated that her testimony regarding the sit/stand option was based on her own professional experience (Tr. 45).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

**D.     The ALJ's Decision**

Adopting the December 19, 2012 findings, ALJ Ambrose found that Plaintiff experienced the severe impairments of "diabetes; hypertension; headaces; obesity; chronic obstructive pulmonary disease . . . ; tobacco abuse; minimal degenerative changes of the lumbar spine; and arthritis of left wrist" but that none of the impairments met or equaled a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13, 52). He adopted the December 19, 2012 determination in finding that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [He] can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; he can each sit, stand, and walk for 6 hours in an eight-hour . . . workday; he requires an option to sit for 15 minutes after every hour of standing while remaining on task; he can frequently use foot controls; occasionally use hand controls; he can frequently finger with the left hand; he can occasionally crawl, crouch, kneel, stoop and balance; he can occasionally climb ramps, stairs, ladders, and scaffolds; and he cannot work in [an] area with concentrated exposure to humidity, wetness, dust, fumes, odors, chemicals, gases, extreme cold, or extreme heat (Tr. 14, 54).

Citing the VE's job findings, the ALJ found that while Plaintiff was unable to perform his past relevant work, he could perform the jobs of counter attendant, usher/ticket taker, and general office clerk (Tr. 18).

The ALJ accorded "limited weight" to Dr. Otten's February, 2013 assessment (Tr. 15). The ALJ noted that the medical source statement stood at odds with contemporaneous treating records showing no complications with the diabetes or edema, or medication side effects (Tr. 15). He cited Dr. Otten's observation that Plaintiff had been non-compliant with

recommendations to quit smoking (Tr. 15). Citing *Sias v. Secretary of Health and Human Services,* 861 F.2d 475 (6th Cir. 1988), the ALJ found that the failure to quit smoking and marijuana use also undermined Plaintiff's claims of disability resulting from COPD (Tr. 16). The ALJ noted that Plaintiff's ability to shop, manage his funds, care for his son as a single parent, and perform personal care functions stood at odds with his professed inability to work (Tr. 16).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Analysis

Plaintiff argues first that the ALJ erred by discounting Dr. Otten's February, 2013 findings. *Plaintiff's Brief* at 5-8, *Docket #12.* Plaintiff, 52 at the time of the administrative

decision, notes that a finding that he was restricted to unskilled, sedentary work, consistent with Dr. Otten's findings, would direct a finding of disability. *Id.*

Plaintiff is correct that an uncontradicted, well supported treating source opinion "must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009) (citing *Wilson v. Commissioner of Social Sec.,* 378 F.3d 541, 544 (6th Cir.2004))(internal quotation marks omitted)); *Cole v. Commissioner of Social Security,* 661 F.3d 931, 937 (6th Cir. 2011). Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. *Wilson,* at 544; § 1527(c).

Dr. Otten's finding that Plaintiff was limited to sedentary work, if adopted, would result in a finding of disability. Under Medical–Vocational Rule 201.14, an individual closely approaching advanced age with a high school education, no transferrable skills, and a limitation to sedentary work generally directs a finding of disability. 20 C.F.R. part 404, subpart P, App. 2. "Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains." *Id.*

Plaintiff is short on the particulars of how the ALJ erred by declining to accept the

February, 2013 "sedentary work" assessment by Dr. Otten. However, my own review of the record shows that the ALJ's rejection of Dr. Otten's finding that Plaintiff could perform only sedentary work is well explained and supported by the record as a whole. The ALJ acknowledged that Plaintiff had a long-term treating relationship with Dr. Otten, a family care specialist (Tr. 14-15). However, the ALJ noted that Dr. Otten's finding that Plaintiff was unable to lift more than 10 pounds stood at odds with Dr. Otten's mostly unremarkable physical examination notes from the same day (Tr. 15, 224, 232-234). The ALJ observed that Dr. Otten's finding that Plaintiff could stand or walk for around two hours in an eight-hour workday contradicted by the lack of lower extremity limitations and Plaintiff's acknowledgment that the back pain was managed with medication (Tr. 15, 224). Contrary to Dr. Otten's finding that Plaintiff experienced significant manipulative limitations of the dominant hand, the ALJ noted that December, 2012 x-rays of the left hand showed only minimal degenerative changes (Tr. 14, 228). The ALJ acknowledged Dr. Otten's February, 2013 finding that the exertional dyspnea was worsening, but cited Dr. Otten's finding that the condition was exacerbated by Plaintiff's failure to quit smoking (Tr. 15). As noted below, the ALJ did not err in finding that Plaintiff's continued tobacco and marijuana use undermined the allegations of disability as a result of COPD (Tr. 15).

Moreover, the ALJ did not reject Dr. Otten's assessment altogether. The ALJ adopted Dr. Otten's finding that Plaintiff would require a sit/stand option by including "an option to sit for 15 minutes after every hour standing" in the RFC (Tr. 14). Consistent with Dr. Otten's

findings, the RFC contains limitations on work with airborne hazards and temperature extremes (Tr. 14).

Because substantial evidence supports both the partial rejection of Dr. Otten's opinion and the ultimate finding that Plaintiff was capable of exertionally light work, remand on this basis is not warranted.

### B. The Credibility Determination and Tobacco/Marijuana Use

Plaintiff argues that the ALJ failed to provide a rationale for the credibility determination. *Plaintiff's Brief* at 9-12. Plaintiff also faults the ALJ for finding that the allegations of disability were undermined by tobacco and marijuana use. *Id.* at 13-17.

The credibility determination, guided by SSR 96-7p, describes the required two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.,* 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [5]

---

[5]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv)

"[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007) (citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)); See also *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

Contrary to Plaintiff's claim, the ALJ's credibility determination is well articulated. The ALJ noted that Plaintiff's claims of exertional, postural, and manipulative limitations were undermined by his ability to care for his son full time, perform personal care tasks, shop for groceries, prepare meals, and look for work after losing his job as a janitor (Tr. 16). Further, the ALJ did not err in finding that the disability claim was undermined by continued tobacco and marijuana use.  Plaintiff disputes the ALJ's reliance on *Sias v. Secretary of Health and Human Services,* 861 F.2d 475, 480 (6th Cir. 1988), for the proposition that

---

The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

smoking against medical advice can be used to discount a claimant's credibility. *Plaintiff's Brief* at 15. He contends that in *Sias,* the Court held that the claimant's purchase of cigarettes (rather than support hose required to treat his condition) could be used to discredit the disability claim. Plaintiff notes that in this case, his tobacco use did not prevent him from purchasing required medication or devices used to treat his condition.

However, the observation in *Sias* that Plaintiff bought cigarettes instead of support hose is secondary to the case's primary holding that a claimant's failure to discontinue tobacco use against medical advice stands at odds with allegations of disability as a result of COPD. *Sias.* at 480 (we can take judicial notice of the massive body of medical opinion supporting the advice the claimant received from his doctor on the subject of cigarette smoking); *Brown v. Social Security Administration* 2000 WL 876567, *1 (6th Cir. August 22, 2000)(claimant's continued smoking despite a diagnosis COPD "indicates that the condition is not disabling"). While the transcript shows that Plaintiff experienced financial limitations since losing his job as a janitor, he was offered free assistance in smoking cessation at the time of his February, 2013 hospitalization (Tr. 273). The subsequent records contain no indication that Plaintiff accepted the offered assistance or otherwise attempted to reduce his tobacco use following the hospital stay. Plaintiff's November, 2013 testimony that he smoked 15 cigarettes a day is consistent his February, 2013 statement that he smoked between 11 and 20 cigarettes a day (Tr. 22). Although Plaintiff testified that the COPD was partially attributable to his prior exposure to work-related airborne hazards, he acknowledged

that his breathing was less labored during a hospitalization where he did not smoke (Tr. 39-40). For these reasons, the ALJ did not err in finding that Plaintiff's tobacco use undermined the claim of disability as a result of COPD.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize the limitations created by Plaintiff's respiratory condition. However, because the RFC for exertionally light work falls within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<pre>
                                    s/R. Steven Whalen
                                    R. STEVEN WHALEN
                                    UNITED STATES MAGISTRATE JUDGE
</pre>

Dated: February 9, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 9, 2015, electronically and/or by U.S. mail.

<pre>
                                    s/Carolyn M. Ciesla
                                    Case Manager
</pre>